The opinion of the court was delivered by
DeBlanc, J.
In February last this case was remanded to the lower *833 court, with instructions to admit and consider some evidence which plaintiff had vainly attempted to introduce on the first trial. That evidence is now before us-.
In January 1878, S. 0. Young obtained from the 6th District Court— an order commanding the seizure and the sale of certain real estate, the paraphernal property of Mrs. O’Keefe, and which it appears she was twice judicially authorized to mortgage and did mortgage, in 1867 and 1871, and twice to secure an alleged loan of fifteen hundred dollars.
The first of said mortgages — that of 1867 — was granted in favor of Louis Mathe, the other in favor of Benjamin C. Young. In the last of the notarial acts passed between Mrs. O’Keefe and the mortgagees, Mathe intervened, acknowledged that his claim had been paid with the funds borrowed from Young, and authorized the cancelling of the mortgage securing its payment.
The evidence adduce 1 on the trial leaves no doubt that but one loan was made to Mrs. O’Keefe, and it was that of 1867, which Mathe testified he made as the agent and with the funds of Benjamin 0. Young. As to the act of 1871, it merely was the useless renewal — in the name of the real creditor — of the obligation and mortgage of 1867. The term of that obligation was thereby extended until 1872.
In June 1873, Mr. O’Keefe died, and, thereafter — from the month of December of that year until 1877, his widow punctually paid, as soon as it was due, the interest which accrued on the note held by Young, and he — on'that account — extended, not less than five times, the term fixed for the payment of the principal, and would have again postponed the already extended term, had not his debtor failed to satisfy State and city taxes levied on the mortgaged property.
The note referred to was, after its maturity, transferred by the creditor to one of his sons, who obtained an order to foreclose the mortgage by which it is secured, and that order was enjoined by Mrs. O’Keefe on the grounds:
1. That she was not examined by the judge who issued the certificate by which she was authorized to make a loan and mortgage her separate property, and that the recitals contained in said certificate are false and fraudulent.
2. That — to the knowledge of Mathe, who acted as the agent of Young — the money was advanced to her husband, did not enure to her benefit, and that it was by constant threats on the part of the latter that she was induced to execute the note and mortgage.
In answer to Mrs. O’Keefe’s injunction, the creditor, after a general denial, specially charges that she has, since the death of her husband and by several payments of interest due on the note, ratified the contract which she now assails.
*834 The law under which the. recited contracts were entered into, is plain; it reads :
“A married woman over the age of twenty-one years, may — by and with the authorization of her husband, and with the sanction of the judge, borrow money or contract debts for her separate benefit and advantage, and to secure the same grant mortgages or other securities affecting her separate estate, paraphernal or dotal.
O. 0.126.
When, with the sanction of the judge, she grants a mortgage, the act drawn to that effect, when executed as prescribed'by law, furnishes full proof against her and her heirs, and is as binding in law and equity, and has the same effect as if made by a femme settle.
C. C. 127 and 128.
Whether as regards a married woman duly authorized, or any other person, fraud vitiates every contract in which it enters ; and the effect of the law which we have quoted, merely was — as we held in Barth vs. Kasa — to shift the burden of proof, when its provisions have been complied with, and — in such a case — to constrain the wife who has acted with the judge’s sanction, to verify any alleged fraud.
30 A. 942.
It does not appear that either Mathé or Young was a party to the pretended threats and reproaches which it is averred — were brought to bear on Mrs. O’Keefe, by her husband, nor that they heard those reproaches and threats. If made at all, they were made out of their presence, and can in no way affect the creditor’s rights. Were it otherwise, who would run the risk of advancing money to a married woman ?
26 A. 418.
As a witness in her own behalf, Mrs. O’Keefe acknowledged that she had gone to, and had met the judge; but denied that she had been examined by him, and swore — not only that the money was to be borrowed for herhusband — but that she had so stated to Mathé, who absolutely contradicted that part of her declaration, and testified that she had called upon him for a loan of money.
It was not proven that the judge who issued the certificate knew any of the parties, that he was a friend of the husband, or that he was actuated, in that instance, by any improper motive; and — had he been so actuated — how imagine that after the death of her husband, when the cause of her silent apprehensions had ceased to exist, Mrs. O’Keefe — the alleged victim of the most extraordinary conspiration — would have refrained, until the institution cf this suit, from denouncing the conspirators and their fraud? How imagine that when, as a widow, she resumed the capacity of which — as a wife — she had been deprived during her marriage, the widow willingly continued to discharge — by partial pay *835 ments of interests and for several years — an obligation which — through the fraud of judge and notary, husband and attorney, she had reluctantly subscribed ? This seems as unreasonable as improbable.
In reference to the first mortgage, Robert J. Ker, the notary before whom the parties appeared to grant and accept said mortgage, testified that, when a loan was made to a married woman, his invariable practice was to hand the money to her and to no one else, and one of his sons, who — under his dictation — wrote the act of 1867, declared that the money then loaned was delivered to Mrs. O’Keefe, in presence of the notary and witnesses.
These declarations counterbalance — if they do not outweigh — the ■denials of Mrs. O’Keefe, and — legally—leave uncontradicted the recitals of the notarial act, and — among them — her own acknowledgment that she received the money loaned in 1867.
As to the consideration of the second note and second mortgage, it was the surrender of the note of 1867, and the cancellation of the mortgage securing its payment. That consideration did enure to Mrs. O’Keefe’s benefit. That transaction delayed the enforcement of a matured claim, the validity of which is asserted and acknowledged in acts Which bear her signature.
The conflict of evidence which marks so many pages of the Record, impels us to pass upon another, an important defence presented and relied upon by the mortgage creditor, and it is that, by the several payments of interest made by her since the death of her husband, Mrs. O’Keefe has ratified the contract of 1871.
That contract, she contends, is one of those which the law prohibits, which never had any legal existence, and to which no ratification can give a validity inconsistent with and repugnant to the prohibition.
Had Mrs. O’Keefe proven, and this she has not done, that she had bound herself for a debt contracted by her husband, we would have paused and considered how the preservation of public order and good morals can be so gravely imperilled by such an act, when the debt is an honest one, that the contract should be classed as one of those which, by our legislation and jurisprudence, are beyond the pale of ratification.
The other ground of nullity urged by Mrs. O’Keefe is that, though she was authorized by the judge to borrow the money and mortgage her property, she was not thus authorized after the preliminary examination prescribed by law. It may be — and on this point we reserve our opinion — that, under special charges and exceptional circumstances, the wife might be permitted to impeach and contradict the judge’s certificate ; but were she to attempt it, and succeed in her attempt, her contract would still remain one of those which — in the very words of the *836 Code — “ may be made valid after the marriage is dissolved, either by-express or implied ratification,” and this Mrs. O’Keefe has done after the death of her husband.
C. 0.1786 (1779) 4 L. R. 328.
It is, therefore, ordered, adjudged and decreed that the judgment appealed from is affirmed with costs.